**FRIX et ux. v. GREEN et al.**

No. 9840.

Court of Civil Appeals of Texas. San Antonio.

May 20, 1936.

Rehearing Denied June 17, 1936.

Hertzberg & Kercheville and Marion R. McClanahan, all of San Antonio, for appellants.

Ingrum & Morris, M. A. Childers, and Clarence R. Boatwright, all of San Antonio, for appellees.

MURRAY, Justice.

This suit was instituted by appellants, G. C. Frix and wife, against the appellees, Ira A. Green and wife, and Mrs. F. B. Griffin and others, to recover upon a certain promissory note and for foreclosure of a lien upon a house and lot situated in South San Antonio. Originally the Petrich-Saur Lumber Company and its receiver, R. N. Gresham, were parties to the

suit, but were dismissed on their plea in abatement. Appellee Mrs. F. B. Griffin set up in her cross-action that she was the holder of a note which was secured by a prior and superior lien to that held by appellants and asked that she have judgment and foreclosure of her note, as a superior lien on the house and lot to the lien held by appellants.

The facts are as follows: On January 2, 1930, appellees Green and wife executed and delivered to the Petrich-Saur Lumber Company their certain promissory note, payable to the order of Petrich-Saur Lumber Company, in the principal sum of $934.84. This note was payable in monthly installments of $20 each, and the note further provided that the makers had the privilege of paying any amount in addition to the $20 installment at any time. The above note was secured by deed of trust lien on lot 20, block 22, in the town of South San Antonio.

On the 10th day of March, 1930, appellants, Frix and wife, purchased from the Petrich-Saur Lumber Company the above-described deed of trust note and received from the lumber company the note accompanied by written transfer thereof. This transfer was not recorded by appellants until the 14th day of June, 1933.

On September 1, 1932, appellees Green and wife executed and delivered another note, in the sum of $1,322.08, payable to the order of Petrich-Saur Lumber Company, secured by a deed of trust and builder's, mechanic's, laborer's and materialman's lien on said lot 20, block 22. The deed of trust securing this second note was filed for record on the 19th day of September, 1932, and contained the following provision: "It is understood and agreed that $599.08 of said sum of $1322.08 represents amount of principal remaining unpaid on note originally for $934.84, secured by deed of trust dated January 2, 1930, executed by Ira A. Green and wife, Ura Green, to Petrich-Saur Lumber Company, recorded in Volume 1162, page 323, in Deed of Trust Records of Bexar County, Texas, and to the extent of $599.08 the original deed of trust is hereby renewed and extended and shall remain in full force and effect until the note secured by mechanic's lien of even date herewith is paid in full."

The consideration for the second note was the balance due on the first note, of about $599.08, and the sum of $723 was for material furnished to the Greens to make additional improvements on said lot 20, block 22.

On or about the 9th day of November, 1932, the second note was purchased from the Petrich-Saur Lumber Company by appellee Mrs. Griffin. The lumber company delivered to Mrs. Griffin the note, together with written transfer thereof, dated November 9, 1932, which was not filed for record until October 23, 1933. This note was sold to Mrs. Griffin for the sum of $1,310.90, which was the amount of principal due on said note on said date. Mrs. Griffin paid for this note by delivering to the lumber company two notes, aggregating the sum of $1,491.86; the lumber company giving Mrs. Griffin their check for $180.78.

The Greens did not know, at the time they executed and delivered the second note, that the lumber company was not the holder of the first note, and had no knowledge that the first note had been transferred to appellants. Neither did Mrs. Griffin know, at the time she purchased the second note, that the appellants were the owners of the first note.

On or about the 28th day of May, 1933, appellants, Frix and wife, filed a proof of unsecured claim in the District Court of the United States for the Western District of Texas, in cause No. 530 in Equity, entitled J. M. Lindsey v. Petrich-Saur Lumber Company, wherein it set out under oath, on the part of appellants, G. C. Frix and wife, as follows: "Of the above amount $612.00 represents proceeds of note collected by defendant as agent for affiant, balance of $758.56 represents the interest on notes due by defendant to affiant."

All payments made by appellees Green and wife on both the first and second notes were made at the office of Petrich-Saur Lumber Company, and all payments received by appellants, Frix and wife, on their notes were received by them from the Petrich-Saur Lumber Company.

The appellants, Frix and wife, had been dealing with the Petrich-Saur Lumber Company for more than twelve years, and during that time the following system of dealing had been engaged in by them: Frix and wife would buy notes from the lumber company; the notes, together with

written transfer, would be delivered to Frix and wife; such written transfer would not be recorded by appellants; the lumber company would continue to collect the principal and interest due on said notes until they were fully paid, then it would notify Frix and wife to bring the notes to its office, the notes would then be canceled, the written transfer returned to the lumber company, and Frix and wife would receive a check for the amount of principal and interest collected by the lumber company. The lumber company would then execute the necessary releases of the notes. As a matter of fact, there was an accounting between the lumber company and appellants every six months, on January 1 and July 1 of each year, at which times Frix and wife would present their notes at the office of the lumber company; the representative of the lumber company would stamp on the back of each note the amount that had been collected thereon, and deliver to Frix and wife a check covering said amounts. As a general rule, when one set of notes was paid off appellants would take the money thus received and purchase more notes from the lumber company.

At the time that Green and wife executed the second, or renewal, note, in the sum of $1,322.08, the bookkeeper for the lumber company entered a credit on the books of the lumber company to Frix and wife in the sum of $564.08, being the amount of the balance due on said original note to the Frixes. The Frixes were notified by Mr. Humphreys, bookkeeper for the lumber company, that the Green note had been paid, and to bring it in so that it might be canceled. Mr. Frix being out of town at the time, the note was presented at the lumber company by Mrs. Frix; the bookkeeper, for some reason, did not give Mrs. Frix a check for the balance due upon the note, and she declined to surrender the note until she received a check. At a later date, Mr. Frix presented the note at the lumber company, but also declined to surrender the note until he received his check. The lumber company had on hand, at all times, sufficient cash to have paid the Frixes the full amount due upon the note, until it went into the hands of a receiver, a short time before this suit was instituted.

The trial judge rendered judgment in favor of Mrs. Griffin in the sum of $1,102.80, being the balance due on the note held by her, and established the note as a first and only lien on lot 20, block 22, in the town of South San Antonio, and canceled the note held by Frix and wife and removed the lien securing it as a cloud upon the title. G. C. Frix and wife, Margaret Frix, have prosecuted this appeal from that judgment.

The controlling question in this case is, whether or not the execution of the second note by the Greens extinguished and amounted to a payment of the original note held by appellants, Frix and wife.

■ It is a well-established rule of law that ordinarily the execution of a renewal note does not amount to a payment and an extinguishment of the original note, and the presumption is that the original note remains in full force and effect. 6 Tex.Jur. p. 810, § 173.

■ It is also well settled that whether a renewal note operates as a discharge of the note of which it is a renewal is dependent upon the intention of the parties. It is a question of fact, not of law. First Nat. Bank v. Yowell, 155 Tenn. 430, 294 S.W. 1101, 52 A.L.R. 1416; Hill v. Texas Trust Co. (Tex.Civ.App.) 236 S.W. 767; First State Bank v. Cooper (Tex.Civ.App.) 179 S.W. 295.

■ In the case at bar, it is quite clear that Frix and wife were the legal owners of the original note and that unless they are bound by the acts of the lumber company the note held by them is still a valid obligation. We conclude that Frix and wife are bound by the acts and conduct of the agents of the lumber company. In the first place, the Frixes failed to record their written transfer of the note, which would have been, when recorded, notice to the world that they were the owners and holders of the original note. In the second place, they authorized and permitted the lumber company to collect for them the monthly installments, and all other proper payments that might be made upon the note. As a matter of fact, appellants permitted the lumber company to act, in every respect, as though they were the actual owners and holders of the note, and by that system of dealing, existing between the lumber company and appellants, the Greens were not only put on notice that the lumber company had sold and transferred the note to the Frixes, but, on the contrary, the Greens were caused to believe that the lum-

ber company was in fact the owner and holder of this note.

Apparently, Frix and wife did not intend that the Greens should ever know that they had been the owners of this note. When the note was fully paid they intended, as was their custom, to return the note, together with the written transfer, to the lumber company and permit the lumber company to execute the necessary release of the note. Under such circumstances Frix and wife are estopped to deny that the lumber company was their agent and they are bound by each and every act of the lumber company.

We thus arrive at the question of whether or not the execution of the second note was intended by the parties as an extinguishment of the original note. There is a great deal of evidence in the record which would justify the conclusion that the parties so intended. The lumber company credited on its books to the account of the Frixes the amount due on the original note and notified them that their note had been paid, and to bring it in for cancellation. The agents of the lumber company promised the Greens to deliver to them the original note. The second note was for a larger sum than the original note. The lumber company sold the second note to Mrs. Griffin, and unless they intended to extinguish the original note this would be a fraud upon Mrs. Griffin. There would be no presumption that the lumber company intended to perpetrate a fraud. The provision in the second deed of trust, to the effect that the lien created in the first deed of trust was not extinguished, but was to remain in full force and effect to secure the second note, is not inconsistent with the idea that the original note was to be extinguished. A lien may be continued in effect, though the original note is extinguished.

The trial judge, in rendering the judgment which was rendered in this case, necessarily found that the original note was extinguished by the execution of the second note, and there being sufficient evidence to support this implied finding, the judgment so rendered should not be disturbed by this court.

Accordingly, the judgment is affirmed.