Robert L. BACCUS, Appellant,

v.

WESTGATE MANAGEMENT CORPORA-
TION, G.B. & J.L. Properties, H.J. Buck-
ley, Individually and as Trustee of the
Westgate Management Corporation
Pension Plan, Richard L. Draker, Chris-
topher A. Ortiz, Elma Ortiz, Raymond L.
Reyes, Elsa L. Reyes, Gerardo Del Valle,
Elizabeth Del Valle, and Jerry Lewis,
Appellees.

Christopher A. Ortiz, Elma Ortiz, Ray-
mond L. Reyes, Elsa L. Reyes, Gerardo
Del Valle, Elizabeth Del Valle and Jerry
Lewis, Appellants,

v.

Robert L. Baccus, Appellee.

No. 04–97–00772–CV.

Court of Appeals of Texas,
San Antonio.

Sept. 23, 1998.

**384**

Jerry T. Steed, Baucum & Steed, P.C., San Antonio, J. Stephen Weakley, Laura Ann Gabrysch, Duncan, Ulman, Weakley & Bressler, Inc., San Antonio, for Appellants.

Russell C. Busby, Comfort, Stephen R. Fogle, Small, Craig & Werkenthin, P.C., San Antonio, for Appellees.

Before LÓPEZ, STONE and DUNCAN, JJ.

## OPINION

LOPEZ, Justice.

Robert L. Baccus appeals a summary judgment entered in a suit seeking a judgment against the makers and guarantors of a note and a judicial foreclosure against the property securing the note. Christopher A. Ortiz, Elma Ortiz, Raymond L. Reyes, Elsa Reyes, Gerardo Del Valle, Elizabeth Del Valle, and Jerry Lewis also filed a notice of appeal to preserve their right to assert issues in the event we reverse the trial court's judgment and hold that Baccus is entitled to a judicial foreclosure. In five issues, Baccus contends the trial court erred by: (1) denying his request for a judicial foreclosure; (2) holding that he was not entitled to recovery from the guarantors; (3) granting a judgment against the makers of the note for an improper amount. We affirm the trial court's judgment in part and reverse the trial court's judgment in part.

### FACTUAL BACKGROUND

Westgate Management Corporation ("Westgate") and Richard L. Draker ("Draker") purchased certain real property from Clyde R. Shiner ("Shiner") and James K. Cox, Jr. ("Cox") in December 1983. As consideration for the property, Westgate and Draker executed two promissory notes for $69,647.50 each. One of the notes was payable to Shiner, and the other note was payable to Cox. Each note was secured by a vendor's lien against the purchased property, which was evidenced by the warranty deed and separate deeds of trust.

In June 1984, Draker conveyed his interest in the property to G.B. & J.L. Properties, a Texas partnership ("G.B. & J.L.").

In August 1986, Westgate and G.B. & J.L. executed a promissory note for $113,000, payable to NBC Bank Ingram Park, National Association ("NBC–Ingram"). The note was guaranteed by Draker and H.J. Buckley ("Buckley"). In February 1987, Westgate and G.B. & J.L. executed a second note for $113,000, in payment of the first note. In addition, Westgate and G.B. & J.L. executed a deed of trust, giving NBC–Ingram a third lien on the property. The deed of trust provided that it was secondary and inferior to the liens in favor of Cox and Shiner.

In October 1987, Draker and Westgate executed two promissory notes in renewal and extension of the Cox and Shiner notes. The liens against the property to secure the prior notes were also renewed and extended to secure payment of the new notes.

In December 1988, Westgate and G.B. & J.L. needed to restructure the liens against the property for development purposes. Buckley borrowed $50,000 from the Westgate Management Corporation Pension Plan (the "Pension Plan"), which he loaned to Westgate and G.B. & J.L. As a part of this transaction, the liens securing the Cox and Shiner notes were transferred to the Pension Plan to secure the note from Buckley.

Also during December 1988, Westgate, G.B. & J.L., and NBC Bank–San Antonio, National Association ("NBC–San Antonio"), successor to NBC–Ingram, entered into an Extension of Real Estate Note and Lien,

renewing and extending NBC's prior note and lien. The Extension contained a cross-default provision, so that a default under the Pension Plan note would constitute a default under the NBC note, and provided that Buckley and Draker would each execute a note for one-half the amount of any unpaid balance remaining on December 1, 1990. The Extension also stipulated that the NBC lien was secondary and inferior to the lien in favor of the Pension Plan. Baccus subsequently acquired the NBC note from the FDIC after NBC–San Antonio went into receivership.

In 1992, the Pension Plan foreclosed on the property and was the successful bidder at the foreclosure. The Pension Plan subsequently sold parcels of the property to Christopher A. Ortiz, Elma Ortiz, Raymond L. Reyes, Elsa Reyes, Gerardo Del Valle, Elizabeth Del Valle, and Jerry Lewis (the "Property Purchasers").

## STANDARD OF REVIEW

The movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985). In determining whether a material fact issue exists to preclude summary judgment, evidence favoring the non-movant is taken as true, and all reasonable inferences are indulged in favor of the non-movant. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d at 548–49. Any doubt is resolved in favor of the non-movant. *Id.*

Where both parties move for summary judgment, and the trial court grants one motion but denies the other, this court considers all questions presented in both motions. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988). This court may affirm the trial court's judgment or reverse the trial court's judgment and render such judgment as the trial court should have rendered. *Id.*

## FORECLOSURE ISSUES

Baccus's third, fourth, and fifth issues relate to the trial court's denial of his request for a judicial foreclosure and the validity of the foreclosure and subsequent conveyances by the Pension Plan. Baccus contends that the Pension Plan's lien is either void or inferior to his lien because his lien was prior in time and the 1988 deed of trust granting the Pension Plan a lien against the property was executed by Buckley, not the property owners. The Property Purchasers counter that the Pension Plan had a valid senior lien transferred from Cox and Shiner. Baccus responds to this position by contending that the Cox and Shiner liens were extinguished when the debt owed to them was paid.

Baccus's position ignores the principle that an existing lienholder can transfer its lien position to another creditor, where the second creditor advances funds to pay the existing indebtedness as a part of a legitimate business transaction. *See Chicago Title Ins. Co. v. Lawrence Investments, Inc.,* 782 S.W.2d 332, 334 (Tex.App.—Fort Worth 1989, writ ref'd); *see also Diversified Mortgage Investors v. Lloyd D. Blaylock General Contractor, Inc.,* 576 S.W.2d 794, 807 (Tex. 1978); *Faires v. Cockrill,* 88 Tex. 428, 31 S.W. 190, 194 (Tex.1895). In this case, the purpose of the transaction involving the payment of the Cox and Shiner notes was legitimate: to obtain development financing. In order to achieve this purpose, Buckley, a shareholder of Westgate and a partner in G.B. & J.L., secured a loan from the Pension Plan. As a condition to such loan, the Pension Plan required an assignment of the lien securing the Cox and Shiner notes, which were to be paid as part of the transaction. Although the transfers of lien assign the lien directly from Cox and Shiner to the Pension Plan, the transaction can be viewed as a loan from the Pension Plan to Buckley and from Buckley to Westgate and G.B. & J.L. The absence of transfers of lien from Cox and Shiner to Buckley and from Buckley to the Pension Plan does not negate the validity of the transaction, especially when the Pension Plan had a right to equitable subrogation even in the absence of the transfer of lien documents. *See Diversified Mortgage Investors,* 576 S.W.2d at 799, 806–07 (applying doctrine of equitable subrogation where holder of vendor's lien executed release of lien

during closing of transaction). Furthermore, the Extension of Real Estate Note and Lien entered into with NBC–San Antonio on the same date the transfers of lien were executed recognizes that the lien in favor of NBC–San Antonio was inferior to the lien securing the payment of the Pension Plan note.

■ Although the Pension Plan held a valid senior lien by assignment, the second issue raised by Baccus was the effect of the foreclosure by the Pension Plan on his lien. Where a second creditor loans funds to a party that are used to pay a debt secured by a vendor's lien, the second creditor's "leapfrog priority extends only to the discharged amount of the superior lien." *See Chicago Title Ins. Co.*, 782 S.W.2d at 335; *see also Diversified Mortgage Investors*, 576 S.W.2d at 807.

■ As a result of the 1988 transaction, the Pension Plan's lien was senior and superior to Baccus only to the extent of the discharged amount of the Cox and Shiner liens. *See Diversified Mortgage Investors*, 576 S.W.2d at 807–08. The foreclosure proceeds exceeded this amount.[1] Nevertheless, the sale by the trustee under the deed of trust transferred the land to the Pension Plan free of all liens. *Id.* Baccus's only recourse at that point was to proceed against the excess proceeds from the sale, which stand in the place of the property. *Id.*

Baccus is not entitled to a judicial foreclosure of his lien,[2] but only to a money judgment against the Pension Plan for the difference between the foreclosure price and the discharged amount of the Cox and Shiner liens. *See id.* Baccus did not pray for a judgment against the Pension Plan in either his petition or his motion for summary judgment. Therefore, this court cannot consider that issue. *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 382 (Tex.1993) (appellate court only considers summary judg-

ment issues contemplated and ruled on by trial court).

Baccus's third, fourth and fifth issues are overruled.

### NOTE AND GUARANTIES

In Baccus's first issue, he complains of the amount of the trial court's judgment against Westgate and G.B. & J.L. The trial court awarded a judgment in Baccus's favor in the amount of $103,222.27. Baccus contends he was entitled to a judgment in the amount of $153,749.43. Baccus also contends in his second issue that he was entitled to summary judgment against both guarantors for the same amount. Only Draker filed a brief in response to Baccus's contention. Draker asserts that he is not individually liable on the note because the FDIC waived its right to have him execute a personal note.

■ With regard to the first issue, one of the elements Baccus was required to prove in order to establish his entitlement to recovery on his note as a matter of law was a "certain balance due and owing on the note." *Stucki v. Noble*, 963 S.W.2d 776, 782 (Tex.App.—San Antonio 1998, pet. denied); *see also Roadside Stations, Inc. v. 7HBF, Ltd.*, 904 S.W.2d 927, 932–33 (Tex.App.—Fort Worth 1995, no writ). Baccus attached an affidavit from Paul M. Anderson, a certified public accountant, to his motion for summary judgment. In his affidavit Anderson states that the unpaid balance was $173,362.07 as of April 23, 1997. Anderson's calculations are set forth in his affidavit. One of the assumptions made by Anderson was that a default under the note was triggered by a default under the Pension Plan note on March 1, 1989.

Westgate and Buckley filed a response to Baccus's motion, challenging the calculations set forth in Anderson's affidavit.[3] In particular, Westgate and Buckley challenged the default date used by Anderson, attaching Buckley's affidavit in which he stated that

---

**1.** The foreclosure bid was $71,000. The sum of $62,422.48 was paid to discharge the Cox and Shiner notes and to obtain the assignment of their liens.

**2.** Because we hold that Baccus is not entitled to judicially foreclose his lien, we do not address

the issues raised in the Property Purchaser's cross-appeal.

**3.** The Property Purchasers also filed a response challenging the calculations.

there was no default under the Pension Plan note prior to 1992. Buckley also attached an affidavit to his cross-motion for summary judgment in which he asserted that the Pension Plan note was modified before the March 1989 payment was due; therefore, no default was triggered under the Pension Plan note due to Buckley's failure to pay the March 1989 installment. The response of Westgate and Buckley also challenges the interest rate assumptions and the manner in which the three payments that were made under the NBC note were applied by Anderson.

In response, Baccus filed Anderson's Supplemental Affidavit. In his supplemental affidavit, Anderson did not use monthly interest compounding and applied all payment reductions to principal. After these adjustments, Anderson stated that the unpaid balance was $153,749.43 as of April 23, 1997. The adjustments by Anderson were not responsive to all of the challenges raised by Westgate and Buckley in their response, and Anderson did not alter his assumption regarding the initial default date of March 1989.

Given the conflicting evidence regarding when a default was triggered under the Pension Plan note, we cannot conclude that Baccus proved a certain balance due and owing under the note as a matter of law. Westgate and Buckley filed a controverting affidavit regarding the default date under the NBC note.[4] This default date was critical in determining the unpaid balance. Therefore, the summary judgment in favor of Baccus and against Westgate and G.B. & J.L. must be reversed.

With regard to the guarantors, Draker did not move for summary judgment; therefore, summary judgment in his favor was improper and must be reversed. *Teer v. Duddlesten,* 664 S.W.2d 702, 704 (Tex.1984). Buckley did move for summary judgment, contending any remedy against him was waived when the FDIC refused to accept a promissory note from him in accordance with the provisions of the Extension of Real Estate Note and Lien. Buckley's motion does not address Baccus's potential right to recover against Buckley as a guarantor of the NBC note, independent of his agreement to execute the note in December 1990.

The summary judgment evidence contains a copy of the note Buckley was required to execute in December 1990, in the event the indebtedness evidenced by the Extension of Real Estate Note and Lien was not paid in full. Buckley states in his affidavit that he executed the note in the fall of 1990 and attempted to deliver it to the FDIC, which was in receivership of NBC–San Antonio. Even if we accept that Buckley timely executed and attempted to deliver the note prior to December 1990, the giving of a new note for a debt evidenced by a former note does not extinguish the old note unless the parties so intend. *See Thompson v. Chrysler First Business Credit Corp.,* 840 S.W.2d 25, 29 (Tex.App.—Dallas 1992, no writ); *Villarreal v. Laredo Nat'l Bank,* 677 S.W.2d 600, 607 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.). Such intention is a question of fact. *Clark v. Pecos County State Bank,* 147 S.W.2d 917, 919 (Tex.Civ.App.—El Paso 1941, no writ); *Frix v. Green,* 95 S.W.2d 219, 221 (Tex.Civ.App.—San Antonio 1936, no writ). Therefore, a fact question remains as to whether Buckley was liable as a guarantor on the NBC note even if Buckley could not be liable on the note he attempted to deliver in 1990. In light of this fact issue, summary judgment should not have been granted in favor of Baccus or Buckley with regard to Buckley's liability as a guarantor.

CONCLUSION

The trial court's judgment in favor of the Property Purchasers as it pertains to the judicial foreclosure is affirmed. The remainder of the trial court's judgment is reversed, and the cause is remanded to the trial court

---

**4.** We note that absent this controverting affidavit, the objections and challenges made in the responses to the interest rate computations and offsets would not have been sufficient to defeat the summary judgment in light of Anderson's affidavit. *See Morgan v. Amarillo Nat'l Bank,* 699 S.W.2d 930, 938 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.); *see generally* TIMOTHY PATTON, SUMMARY JUDGMENTS IN TEXAS 175 (1995).

for further proceedings consistent with this opinion.