Jose Manuel **RAMIREZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 08–96–00409–CR.

Court of Appeals of Texas, El Paso.

April 24, 1998.

Discretionary Review Refused Sept. 30, 1998.

---

6. Tex.Rev.Civ. Stat. Ann. art. 6132a–1, § 13.01(a)(b) (Vernon Supp.1998).

7. Tex.Rev.Civ. Stat. Ann. art. 6132b, § 4(4) (Vernon 1970).

Scott Segall, Martin & Segall, El Paso, for appellant.

Jaime E. Esparaza, Dist. Atty., El Paso, for state.

Before BARAJAS, C.J., and LARSEN and CHEW, JJ.

## OPINION

BARAJAS, Chief Justice.

Jose Manuel Ramirez appeals his conviction for murder. The jury found him guilty and assessed punishment at eighty (80) years' incarceration in the Institutional Division of the Texas Department of Criminal Justice and a fine of $9,000.

### I. SUMMARY OF THE EVIDENCE

On April 29, 1995, Veronica Cera held a birthday party for her cousin at 772 Lico Lane in El Paso. In attendance at the birthday party were members of the Moon City and Barrio Nuevo gangs. As the party was ending, a car driven by Victor Aguirre, the father of Veronica's three-month-old child, approached. From the passenger's side of the car, Ramirez, Appellant, leaned out of the window and shot at the party with a rifle. The car then sped away from the house. Rodrigo Ramirez, Veronica Cera's brother, lay on the ground with a gunshot wound to the neck. Rodrigo Ramirez later died from the gunshot wound.

The police were promptly notified. While Deputy Conner of the El Paso Sheriff's Department was responding to the call, he saw a grey car matching the description of the car involved in the shooting. As he began to follow the car, it sped up. During the ensuing chase, a rifle was thrown out of the car from the passenger's window. When the car was finally stopped, Appellant was removed from the passenger's seat and handcuffed. Appellant was later charged with and convicted of murder. This appeal follows.

### II. DISCUSSION

In Point of Error No. One, Appellant contends that the trial court erred in charging the jury with an overly broad definition of intent. In the present case, Appellant was charged with intentional murder. The definitional section of the jury charge reads as follows:

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

■ Murder is a result oriented offense. *Cook v. State*, 884 S.W.2d 485, 490 (Tex.Crim. App.1994). When a defendant is charged with a result oriented crime, as in the instant case, he is entitled on request to have the abstract definitions of "intentionally and knowingly" limited to the result only language. *Barcenes v. State*, 940 S.W.2d 739, 743–44 (Tex.App.—San Antonio 1997, pet. ref'd). Any instructional language relating to conduct is inconsequential. *Id.* Since Appellant was charged with a "result of conduct" offense, the trial judge erred in not limiting the culpable mental states to the result of Appellant's conduct. *Cook*, 884 S.W.2d at 490. We must conduct a harm analysis to determine if this error requires reversal of Appellant's conviction. In assessing harm from the inclusion of improper elements in the definitions of culpable mental states, we "may consider the degree, if any, to which the culpable mental states were limited by the application portions of the jury charge." *Id.*

■ In this case, the application paragraph specified that Appellant did intentionally and knowingly "cause" the death of an individual or "intend to cause serious bodily injury to an individual, RODRIGO RAMIREZ, intentionally or knowingly committing an act clearly dangerous to human life, to-wit: by shooting RODRIGO RAMIREZ with a firearm, thereby *causing* the death of

said RODRIGO RAMIREZ." In *Hughes v. State*, 897 S.W.2d 285, 296 (Tex.Crim.App. 1994), *cert. denied*, 514 U.S. 1112, 115 S.Ct. 1967, 131 L.Ed.2d 857 (1995), the Court of Criminal Appeals noted that although the definitions of "intentionally" and "knowingly" set forth three alternative elements of conduct, when viewed in their factual context it was apparent which conduct element applied to the offense. *Id.* The court concluded:

> [B]ecause the facts, as applied to the law in the application paragraph, pointed the jury to the appropriate portion of the definitions, no harm resulted from the court's failure to limit the definitions of culpable mental states. . . .

*Id.; see also Patrick v. State*, 906 S.W.2d 481, 491–93 (Tex.Crim.App.1995), *cert. denied*, 517 U.S. 1106, 116 S.Ct. 1323, 134 L.Ed.2d 475 (1996). The same can be said of the facts in this case. Thus, the facts, as applied to the law in the application paragraph, pointed the jury to the proper result oriented culpable mental state portion of the definitions. Consequently, no harm resulted from the court's failure to limit the definitions of "intentionally" and "knowingly" to the result of Appellant's conduct. Appellant's Point of Error No. One is overruled.

### A. Impeachment of State's Witness

Appellant also contends that the trial court erred in not permitting him to impeach the State's witness with the fact that the charges brought against the witness were originally dismissed. It is Appellant's belief that the trial court violated his Sixth Amendment right to confront the witnesses who testify against him by restricting Appellant's ability to cross-examine Eric Ortiz, a witness for the State. The trial court disallowed the jury from hearing testimony that the original charges against Eric Ortiz were dismissed.

While exposing a witness's motivation to testify against a defendant is a proper and important function of the constitutionally protected right to cross-examination, and the defendant is allowed great latitude to show any fact which would tend to establish ill feeling, bias, motive, and animus on the part of the witness testifying against him, this right does not prevent a trial court from imposing some limits on the cross-examination into the bias of a witness. *McDuff v. State*, 939 S.W.2d 607, 618 (Tex.Crim.App. 1997), *cert. denied*, — U.S.——, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997). The parameters of cross-examination for a showing of witness bias rests within the sound discretion of the trial court. *Id.* Of course, within reason, the trial judge should allow the accused great latitude to show any relevant fact that might affect the witness's credibility. *Id.* (citations omitted). In this case, Appellant was permitted wide latitude in attacking the witness's motivation or bias. Defense counsel asked numerous questions about the agreement between him and the State. In addition, Mr. Ortiz admitted that he would do anything to keep from going to jail. Appellant was permitted to demonstrate the accomplice's vulnerable relationship with the State and potential motive, bias, or interest. Therefore Appellant was able to show that since the accomplice witness had entered into an agreement with the State, he was at least potentially beholden to some extent to the State. Allowing Appellant to elicit the information about the dismissal would not have shown further his vulnerable relationship with the State or his potential motive, bias, or interest. In the instant case, based upon the cross-examination that was allowed, we conclude that the trial court did not abuse its discretion in denying Appellant's proffered evidence about the State's decision to dismiss the original charges against Eric Ortiz. Appellant's Point of Error No. Two is overruled.

### B. Admissibility of Third Party Confession

In Point of Error No. Three, Appellant maintains that the trial court erred by not permitting the introduction of evidence that Victor Aguirre told Officer Martin Salazar, a policeman with the Socorro Police Department, that he committed the offense. The actual testimony was, "He made the statement saying, I believe—I believe he said, I did not mean to kill him or shoot him or something like that." Previously, the same officer testified that Victor Aguirre said, "Mister, I did not want to kill him. All I did

was to want to shoot him." The trial court found this evidence inadmissible because it "comes after the completion of the conspiracy. And number two, it's self-serving."

■ Appellant claims that the statement was admissible as a statement against interest. A statement against interest is one which at the time of its making is so far tended to subject him to criminal liability that a reasonable man in his position would not have made the statement unless he believed it to be true. TEX.R.CRIM. EVID. 803 (24). To be admissible a statement tending to expose the declarant to criminal liability must be corroborated by circumstances clearly indicating its trustworthiness. *Id.* Assuming without deciding that the testimony of Officer Salazar was improperly excluded, our examination of the record in its entirety leads us to conclude that the alleged error did not affect a substantial right of Appellant. *See* TEX.R.APP. P. 44.2(b); *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App. 1997). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King,* 953 S.W.2d at 271. In light of the properly admitted evidence, the excluded evidence from Officer Salazar did not have a substantial or injurious influence on the jury's verdict. *Id.* Even if the testimony was admitted and believed by the jury, there was substantial evidence that Appellant was a party to the offense. As a party, the jury could have logically and legally convicted Appellant of murder based on the law of parties. Therefore, we cannot say that an error in this instance had a substantial effect on the jury's verdict.

### C. Comment on Failure to Testify

In Point of Error No. Four, Appellant contends that the trial court erred in not granting a mistrial as to the punishment stage because the State improperly commented on his right not to testify. When questioning the victim's mother, the State asked, "Now, I only have one final question for you, Ms. Cera, the person that has been found guilty for killing your son is sitting in the courtroom right now. Is there anything that you want to tell the jury about how you feel about that?" Ms. Cera responded, "I just want to know what my son did to him, what did my son did [sic] to you so for you to take him away from me." Appellant's counsel immediately objected. The trial court sustained the objection, instructed the jury to disregard, and overruled the request for a mistrial.

■ In this case, we note that the indirect remark occurred during the State's case-in-chief in the punishment phase which was prior to the time the case had closed. It is well established that a comment which occurs prior to the time testimony in the case has closed cannot be held to refer to a failure to testify which has not yet occurred. *Hogan v. State,* 943 S.W.2d 80, 82 (Tex.App.—San Antonio 1997, no pet.)(emphasis added). Accordingly, the statement by the witness was not a comment on the defendant's failure to testify. Appellant's fourth point of error is overruled.

### D. Denial of Motion for Continuance

■ In Point of Error No. Five, Appellant argues that the trial court erred in denying his motion for continuance based on the El Paso County Sheriff's Department's failure to issue subpoena requests to the District Clerk's Office in violation of the Code of Criminal Procedure. The Code of Criminal Procedure provides that "[a] criminal action may be continued on the written motion ... of the defendant, upon sufficient cause shown." TEX.CODE CRIM PROC. ANN. art. 29.03 (Vernon 1989). Granting or denying a motion for continuance is within the discretion of the trial court and will not be reversed on appeal unless it is shown that the court abused its discretion. *Janecka v. State,* 937 S.W.2d 456, 468 (Tex.Crim.App. 1996), *cert. denied,* — U.S. —, 118 S.Ct. 86, 139 L.Ed.2d 43 (1997); *Greenwood v. State,* 948 S.W.2d 542, 548 (Tex.App.—Fort Worth 1997, no pet.). In order to find an abuse of discretion in refusing to grant a continuance, there must be a showing that the defendant was prejudiced by counsel's inadequate preparation time. *Greenwood,* 948 S.W.2d at 548. Appellant's counsel did not make a bill of exception or file a motion for new trial to explain how, if at all, Appel-

lant was prejudiced by counsel's inadequate preparation time. *Id.* Although Appellant's counsel asserts that the Sheriff's acts harmed Appellant because it denied him effective assistance of counsel, the trial court did not abuse its discretion in denying Appellant's motion for continuance. *Janecka,* 937 S.W.2d at 468; *Heiselbetz v. State,* 906 S.W.2d 500, 511 (Tex.Crim.App.1995). Point of Error No. Five is overruled.

### E.  Batson Challenge

In Point of Error No. Six, Appellant argues that the trial court erred by not granting his *Batson* challenge. During the voir dire proceedings, Appellant's counsel objected to the State's use of its peremptory challenges to strike Hispanic jurors. The State then provided its race neutral explanations for its strikes. Counsel for Appellant did not offer any evidence nor objection to rebut the race neutral explanations. On appeal, Appellant contends that the reasons to justify the strikes of jurors number twenty, thirty-three, and thirty-four were not race neutral.

A *Batson* inquiry entails a three-step process. First, the opponent of a peremptory challenge must make out a prima facie case of racial discrimination. TEX.CODE CRIM. PROC. ANN. art. 35.261 (Vernon 1989); *Purkett v. Elem,* 514 U.S. 765, 766, 115 S.Ct. 1769, 1770, 131 L.Ed.2d 834 (1995); *Williams v. State,* 937 S.W.2d 479, 485 (Tex.Crim.App. 1996); *Carter v. State,* 946 S.W.2d 507, 511 (Tex.App.—Houston [14th Dist.] 1997, pet. ref'd). Then, the proponent of the strike must come forward with a race-neutral reason for the challenge. *Carter,* 946 S.W.2d at 511. Finally, if a race-neutral reason is given, the opponent of the strike shoulders the burden of proving intentional discrimination. For the purpose of step two, a reason is deemed race-neutral so long as no discriminatory intent is inherent in the explanation given, even if the explanation is fantastic or implausible. *Id.* Therefore, we are not to consider whether the race-neutral explanation is "persuasive or even plausible." *Id.* (citations omitted). A racially neutral explanation means only an explanation that, on its face, does not deny equal protection. *Purkett,* 514 U.S. at 767–69, 115 S.Ct. at 1771. As the Supreme Court held in *Purkett v. Elem:* "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Id.* The defendant must prove by a preponderance of the evidence that the reasons given by the State in support of its contested strike are a sham or a pretext for discrimination; *Keeton v. State,* 749 S.W.2d 861, 868 (Tex.Crim.App. 1988), simply stating his disagreement with some of the State's explanations is insufficient. *Davis v. State,* 822 S.W.2d 207, 210 (Tex.App.—Dallas 1991, pet. ref'd); *Straughter v. State,* 801 S.W.2d 607, 613 (Tex.App.—Houston [1st Dist.] 1990, no pet.). Whether the defendant ultimately proved his allegations of purposeful discrimination by a preponderance of the evidence is a finding of fact, which we analyze under a clear error standard of review. *See Hernandez v. New York,* 500 U.S. 352, 359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991); *Vargas v. State,* 838 S.W.2d 552, 553–53 (Tex.Crim.App.1992).

The trial court's finding will largely turn on an evaluation of the prosecutor's credibility. *See Batson v. Kentucky,* 476 U.S. 79, 98 n. 21, 106 S.Ct. 1712, 1724 n. 21, 90 L.Ed.2d 69 (1986). Thus, appellate courts will accord the trial court's finding great deference, and will not disturb the finding unless it is clearly erroneous. *See Chambers v. State,* 866 S.W.2d 9, 23 (Tex.Crim.App.1993), *cert. denied,* 511 U.S. 1100, 114 S.Ct. 1871, 128 L.Ed.2d 491 (1994); *Adanandus v. State,* 866 S.W.2d 210, 224 (Tex.Crim.App.1993), *cert. denied,* 510 U.S. 1215, 114 S.Ct. 1338, 127 L.Ed.2d 686 (1994). On appeal, we review the record in the light most favorable to the trial court's ruling. *Adanandus,* 866 S.W.2d at 224. We will reverse only if we are left with the "definite and firm conviction that a mistake has been committed." *Hill v. State,* 827 S.W.2d 860, 865 (Tex.Crim.App.1992), *cert. denied,* 506 U.S. 905, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992). Furthermore, we will not reverse a trial court's finding based upon information not introduced into evidence during the *Batson* hearing or elicited before the trial judge during the voir dire. *Vargas,* 838 S.W.2d at 557.

The State indicated that it struck juror twenty because she "may know one of our

witnesses, Veronica Cera, who is the sister of the victim in the case. Based on that, we decided that we would go ahead and strike her to avoid any potential problem as to this—as to her knowing the witness on this case." Jurors thirty-three and thirty-four were both stricken because it appeared to the State that questions were directed toward both jurors in an attempt by the defense "to contract with them as to any issues pertaining to a confession, or the reliability of a confession, whether or not it was voluntarily given."

▪ On appeal, Appellant argues that the State's explanations are not race neutral. Yet, Appellant, having heard the prosecutor's race-neutral explanations in this case, presented nothing more to impeach or rebut those explanations. Without any evidence that the explanations are pretextual or a sham, we must deem the reasons offered to be race neutral. *Purkett*, 514 U.S. at 767–69, 115 S.Ct. at 1771. Consequently, we conclude that the trial court's finding of racial neutrality in the striking of the jurors was not clearly erroneous. Point of Error No. Six is overruled.

### F. Denial of Motion for Contempt of Court

▪ In Point of Error No. Seven, Appellant maintains that he was denied his due process rights because the trial court did not hold the Sheriff's Department in contempt of court for neglecting to execute a subpoena. According to Texas Code of Criminal Procedure art. 2.16, the sheriff may be liable for contempt if he wilfully refuses or fails from neglect to execute any subpoena. TEX.CODE CRIM. PROC. ANN. art. 2.16 (Vernon 1977). This article is to be enforced as if it were a civil case. *Id.* This Court has no jurisdiction to entertain an appeal from a refusal to hold a party in contempt because it is not a final, appealable judgment. *Norman v. Norman*, 692 S.W.2d 655, 655 (Tex.1985)(per curiam); *Velez v. DeLara*, 905 S.W.2d 43, 46 (Tex. App.—San Antonio 1995, no writ). To the extent Appellants complain of the trial court's refusal to hold the sheriff's department in contempt, this Court has no jurisdiction and renders no opinion.

### G. Voluntary Intoxication As Mitigation

▪ In Point of Error No. Eight, Appellant asserts that the trial court erred in not charging the jury in the punishment phase with Texas Penal Code § 8.04 relating to intoxication as mitigation. To raise the issue of insanity by voluntary intoxication for the purpose of mitigation, the evidence must establish that Appellant, as a result of intoxication (1) did not know his conduct was wrong, or (2) was incapable of conforming his conduct to the requirements of the law he violated. *Coward v. State*, 931 S.W.2d 386, 389 (Tex.App.—Houston [14th Dist.] 1996, no pet.).

▪ Appellant was clearly intoxicated; however, there is no evidence tending to show that he did not know his conduct was wrong. *Id.; see also Cordova v. State*, 733 S.W.2d 175, 190 (Tex.Crim.App.1987), *cert. denied*, 487 U.S. 1240, 108 S.Ct. 2915, 101 L.Ed.2d 946 (1988)(evidence that defendant was "crazy drunk" insufficient to show temporary insanity); *Still v. State*, 709 S.W.2d 658, 661 (Tex.Crim.App.1986)(evidence that defendant "lost his head" insufficient to show temporary insanity). Actually, the defendant's confession clearly indicates that during the commission of the offense he was aware of the difference between right and wrong because he stated, "I only wanted to scare them.... I would like to state that the reason I handled the rifle was because I did not want anyone to get hurt.... I did not mean to hurt anyone." Since the evidence shows only that Appellant was intoxicated and that his state of intoxication was voluntarily induced, he is not entitled to the instruction on voluntary intoxication as mitigation under Section 8.04(a) of the Texas Penal Code. Point of Error No. Eight is overruled.

### H. Denial of Requested Jury Instruction for Lesser Included Offense

▪ In his ninth and final point of error, Appellant challenges the trial court's refusal to instruct the jury on the lesser included offense of deadly conduct. To determine whether Appellant was entitled to a

charge on the lesser included offense, we must apply a two-prong test. *See Bignall v. State*, 887 S.W.2d 21, 23 (Tex.Crim.App. 1994); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex.Crim.App.1993), *cert. denied*, 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993); *Royster v. State*, 622 S.W.2d 442, 446 (Tex.Crim.App.1981); *Bartholomew v. State*, 882 S.W.2d 53, 54–55 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd). First, the lesser included offense must be included within the proof necessary to establish the offense charged. *Bignall*, 887 S.W.2d at 23. Second, some evidence must exist in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty *only* of the lesser offense. *Id.* at 24. (emphasis added). All the evidence presented at trial should be reviewed in making this determination. *Jones v. State*, 921 S.W.2d 361, 364 (Tex.App.—Houston [1st Dist.] 1996, pet. ref'd). Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge. *Bignall*, 887 S.W.2d at 23. An issue whether the defendant is guilty only of a lesser included offense is raised if there is evidence that affirmatively rebuts or negates an element of the greater offense, or if the evidence is subject to different interpretations, one of which rebuts or negates the crucial element. *See Schweinle v. State*, 915 S.W.2d 17, 19 (Tex.Crim.App.1996); *Saunders v. State*, 840 S.W.2d 390, 391–92 (Tex.Crim.App.1992). There must be some evidence directly germane to a lesser included offense for the factfinder to consider before an instruction on a lesser included offense is warranted. *Graham v. State*, 950 S.W.2d 724, 729 (Tex.App.—Beaumont 1997, pet. granted). Any statement by Appellant that he did not mean to hurt anyone cannot be taken in a vacuum. *Id.* at 730; *Johnson v. State*, 915 S.W.2d 653, 659 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd). That statement alone does not necessarily require an instruction on deadly conduct. *Johnson*, 915 S.W.2d at 659.

The consequences of Appellant's intentional act of shooting, which resulted in the death of Rodrigo Ramirez, went well beyond the mere act of placing another in imminent danger of serious bodily injury. *Graham*, 950 S.W.2d at 730. Once Appellant fired the gun and shot Rodrigo Ramirez, Rodrigo Ramirez was no longer merely in imminent danger of serious bodily injury. Rodrigo Ramirez, in fact, was killed by the wound that gave rise to the indictment for murder. Section 22.05 of the Texas Penal Code covers intent which falls short of harming another: that is, although no physical harm results, the acts are highly dangerous. *Mares v. State*, 903 S.W.2d 419, 422 (Tex.App.—Eastland 1995, pet. ref'd). If injury results from Appellant's conduct, the act of shooting at Rodrigo Ramirez constitutes more than deadly conduct. *Graham*, 950 S.W.2d at 731 n. 2. The evidence cannot support a rational inference by the jury that Appellant was guilty only of deadly conduct. Consequently, Appellant is not entitled to a jury instruction on deadly conduct. Appellant's Point of Error No. Nine is overruled.

Having overruled each of Appellant's points of error, we affirm the judgment of the trial court.

LARSEN, J., not participating.

CHEW, Justice, concurring.

I join the majority opinion completely and write separately only to except to the statement that:

> It is well established that a comment [on the failure to testify] which was prior to the time testimony in the case has closed *cannot be held to refer to a failure to testify which has not yet occurred.* (Emphasis in original).

Opinion at 224.

It is a true statement and, even though it has evolved from meager roots, I must readily concede that it is clearly established precedent. *See Hogan v. State*, 943 S.W.2d 80 (Tex.App.—San Antonio 1997, no pet.); *Reynolds v. State*, 744 S.W.2d 156, 159 (Tex.App.—Amarillo 1987, pet. ref'd); *McCarron v. State*, 605 S.W.2d 589, (Tex.Crim.App. 1980); *Garcia v. State*, 513 S.W.2d 559, 562 (Tex.Crim.App.1974); *Jackson v.State*, 501 S.W.2d 660, 662 (Tex.Crim.App.1973); *Terry v. State*, 489 S.W.2d 879, 881 (Tex.Crim.App. 1973). On its face, it also seems quite logical,

except that, in my opinion, it flies in the teeth of the Texas Constitution and statute.

The true issue is not the inference that a jury might draw from a defendant's invocation of constitution rights. What is involved is the direct attack on constitutional rights. Article I, § 10 of the Texas Constitution states in pertinent part:

> In all criminal prosecutions the accused .... shall not be compelled to give evidence against himself, ....

Article 1.05, TEX.CODE CRIM.PROC. ANN. says the same.

The prosecutor's question in this case invited a response from the victim's mother that imposed an inescapable compulsion on the defendant to testify. It was a violation of the defendant's constitutional and statutory right to be free from compelled self-incrimination.