COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

TOMMY LEE HIGHTOWER,                              )

                                                                              )              
No.  08-01-00263-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )             
Criminal District Court

THE STATE OF TEXAS,                                     )

                                                                              )            
of Dallas County, Texas

Appellee.                           )

                                                                              )             
(TC# F-0070536-NH)

                                                                              )

 

 

O
P I N I O N

 

This is a murder
case.  Tommy Lee Hightower was convicted
of the murder of Teowonka D. Warren (AWarren@) and sentenced to 50 years in
prison.  He brings four issues. 

Warren and a
friend, Virnor Williams, left a night club in South Dallas and got into a
street fight with Appellant and several gang members.  Warren was hit on the head with a beer bottle
and fell face first on the street.  He
was shot once in the back and died at a local hospital. 

Appellant first
complains that the State improperly exercised three peremptory challenges on
three African-Americans.  The trial court
found that strikes were based on race neutral reasons and denied the Batson
Challenge.  Batson v. Kentucky,
476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).








The familiar three-step
test required to prove race discrimination in the exercise of a peremptory
challenge is:  (1) the opponent of a
peremptory challenge must make out a prima facie case of racial discrimination;
(2) the burden of production shifts to the proponent of the strike to come
forward with a race neutral explanation for the strike; and (3) the trial court
must then decide whether the opponent of the strike has proved purposeful
racial discrimination.  Regarding the
second step, the Supreme Court in Batson stated that the prosecutor Amust articulate a neutral explanation
related to the particular case to be tried@
and give a A>clear and reasonably specific= explanation of his >legitimate reasons= for exercising the challenges.@  
Batson v. Kentucky, 476 U.S. at 98 n.20, 106 S.Ct. at 1724
n.20.  

The record
reflects that there were five African-Americans on the panel.  The State used all ten of its peremptory
strikes and struck three of the African-Americans.  The two remaining African-Americans were
selected for the jury.  Appellant
objected, noting that Appellant is African-American.  The trial judge initially found that striking
three of five African-Americans was a prima facie case of racial discrimination
that required the State to explain its justification for striking those three
prospective jurors. 

The State stated
that the basis for striking the first potential juror, Ms. Thompson, Number 14,
was that:

[S]he stated that we would--we would
have to have very credible evidence and cases where I believe when I was
talking about either the one eye-witness or on the issues of motive, it was
early on in my time to speak, so I think it might have been maybe with the
motive issue.  I just wrote that
down.  She was taking a hard line with me
on that topic and I just felt that she was not going to be favorable to the
State.

 








Appellant contends
that the explanation was pretextual and that Ms. Thompson made only one
statement that was not consistent with the proffered explanation.  As the State points out, in fact, that much
earlier in the voir dire, Ms. Thompson, in response to how do you feel
about the presumption of innocence question posed to the panel, Ms. Thompson
replied:

I contend that a
person is innocent until proven guilty, but I do believe that I do have to have
adequate evidence to prove that person=s
guilt in order for me to make a fair decision. 
I do not make a decision otherwise, and as someone said send someone to
the pen for life unless I do have evidence.

 

While this does
not exactly match-up with the prosecutor=s
statement, neither is it so wide of the mark, and Appellant made no effort to
rebut nor cross-examine the prosecutor.  Ramirez
v. State, 976 S.W.2d 219, 225 (Tex.App--El Paso 1998, per ref=d). 
We also note that early in the voir dire, there were a number of
panelists that did answer the prosecutor=s
questions about motive and there were at least three prospective jurors that
stated essentially that they would take a Ahard
line@ on
motive.  Each of those panelists were
struck by the State.  We find that the
State gave a clear and reasonably specific explanation that was race neutral
with respect to this peremptory strike. 

The reason given
for the second strike, Mr. Steele, Number 32, was that he was a postal worker
and the prosecutor Anever had
luck with postal workers to begin with and I=ve
constantly struck them from my trials whenever I=m
picking a jury.@

Occupation and a
prosecutor=s
experience are racially neutral reasons for striking a prospective juror.  See Tompkins v. State, 774 S.W.2d 195,
205 (Tex.Crim.App. 1987), aff=d,
490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989).  Appellant made no attempt to impeach or rebut
the prosecutor about this statement.  See
Ramirez, 976 S.W.2d at 225.








In the case of the
third prospective juror struck, Ms. Crawford, Number 44, the State questioned
her literacy from the way she filled out her juror card and alluded to her
having a felon nephew, and concluded that she was not qualified to follow the
charge.  In particular, he pointed out a
number of purportedly odd responses on her questionnaire.  The trial court also noted these failings.  The State also mentioned that Ms. Crawford
had a nephew with a felony conviction. 
Each reason is racially neutral and legitimate reasons to exercise a
peremptory strike, and because the Appellant did not cross-examine the
prosecutor or attempt to rebut the neutrality of the reasons given, he has
failed to meet his burden of proving a pretext. 
See Ramirez, 976 S.W.2d at 225. 
Issue One is overruled. 

In Issue Two, the
Appellant asserts that the State knowingly asked an improper question of a
witness in order to elicit a harmful answer. 
We find nothing in this record that supports this assertion.  The prosecutor on redirect asked the police
officer a question that should have been answered yes or no, but instead the
officer enumerated criminal activities of Appellant=s
gang before there was an objection.  The
objection was sustained by the trial court and he instructed the jury to
disregard the testimony.  Appellant made
a motion for mistrial which was denied by the trial court.

The denial of a
motion for mistrial is reviewed under the standard of abuse of discretion.  See Trevino v. State, 991 S.W.2d 849,
851 (Tex.Crim.App. 1999).  A trial court
does not abuse its discretion when its decision is at least within the zone of
reasonable disagreement.  See  Montgomery v. State, 810 S.W.2d 372, 391
(Tex.Crim.App. 1991)(Opin. on reh=g).  We presume the jury followed the trial court=s instruction to disregard.  Wesbrook v. State, 29 S.W.3d 103, 116
(Tex.Crim.App. 2000).  AOnly offensive or flagrant error
warrants reversal when there has been an instruction to disregard . . . .@ 
Id. at 116.








Here, the officer=s statement was simply not so offensive
or so flagrant that the trial court=s
immediate instruction to the jury to disregard and the instruction of the
officer to just answer yes or no cured the error.  Issue Two is overruled. 

In Issue Three,
the Appellant complains that the evidence is factually insufficient.  When conducting a review of the factual
sufficiency of the evidence, we consider all of the evidence but we do not view
it in the light most favorable to the verdict.  Clewis v. State, 922 S.W.2d 126, 129
(Tex.Crim.App. 1996).  As in the case of
legal sufficiency review, we consider all of the evidence weighed by the jury,
including both admissible and inadmissible evidence.  We review the evidence weighed by the jury
that tends to prove the existence of the elemental fact in dispute and compare
it with the evidence that tends to disprove that fact.  Johnson v. State, 23 S.W.3d 1, 7
(Tex.Crim.App. 2000); Jones v. State, 944 S.W.2d 642, 647 (Tex.Crim.App.
1996), cert. denied, 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d 54
(1997).  A defendant challenging the
factual sufficiency of the evidence may allege that the evidence is so weak as
to be clearly wrong and manifestly unjust, or in a case where the defendant has
offered contrary evidence, he may argue that the finding of guilt is against
the great weight and preponderance of the evidence.  See 
Johnson, 23 S.W.3d at 11. 
Although we are authorized to set aside the fact finder=s determination under either of these
two circumstances, our review must employ appropriate deference and should not
intrude upon the fact finder=s
role as the sole judge of the weight and credibility given to any evidence
presented at trial.  See Johnson,
23 S.W.3d at 7.  We are not free to set
aside a verdict merely because we feel that a different result is more
reasonable.  Cain v. State, 958
S.W.2d 404, 407 (Tex.Crim.App. 1997); Clewis, 922 S.W.2d at 135; Arzaga
v. State, 86 S.W.3d 767, 777-78 (Tex.App.--El Paso 2002, no pet.).








The record in this
case reveals that the Appellant, the victim, Olivia Humphrey, and Lashameka
Foster were all family-related or acquaintances.  They were regulars at the ASomething Nice@
club in South Dallas.  When the club
closed in the early morning hours of January 23, 2000, the victim got into a
fight with the Appellant and four or five others, all members of the Tre-5-7
Crips gang.  When questioned at the
shooting scene, two cousins, Olivia and Lashameka, denied seeing the person who
shot the victim.  Four days later, the
lawyer for Olivia=s
boyfriend contacted Detective Crum with information on the identity of the
shooter. Olivia would identify the shooter in exchange for favorable
consideration of her boyfriend=s
drug charges.  Olivia met with the
detective and named the Appellant as the shooter.  

Olivia Humphrey
did not testify at trial, but her cousin Lashameka Foster did.  Lashameka testified that she saw Appellant
shoot the victim one time in the back when the victim was laying face down on
the street.  On cross-examination, Lashameka
admitted that she had previously testified that the victim was standing when he
was shot in the back.  

There were a
number of other State witnesses, however, none of their testimony provided any
proof that Appellant was the shooter. 
Appellant did not testify and rested his case without putting on any
witnesses.

Appellant essentially
challenges the credibility of Lashameka Foster and the motives of Olivia
Humphrey.  As noted above, we should not
intrude upon the fact finder=s
role as the sole judge of the weight and credibility of the evidence presented
at trial.  While Lashameka=s testimony might appear quite
incredible from the cold record before us, the jury obviously believed
her.  We simply cannot say that the
evidence is so weak as to be clearly wrong and manifestly unjust.  Issue Three is overruled. 








In his fourth and
last issue, the Appellant complains about a series of photographs illustrating
Tre-5-7 gang graffiti that was photographed from 1991 to 1993, and which were
admitted over objection during the punishment phase.  Officer Quigg identified the photos and
testified that he determined that the Appellant was a member of the gang in
1997.  Appellant contends that the photos
are not relevant because they were taken years before the gang affiliation of
the Appellant was known and Warren=s
death.  He also complains that they are
more prejudicial than probative.

Admissibility of
photographs over challenges are within the sound discretion of the trial
judge.  See Sonnier v. State, 913
S.W.2d 511, 518 (Tex.Crim.App. 1995). 
Rule 403 of the Texas Rules of Criminal Evidence favors the admission of
relevant evidence and carries a presumption that relevant evidence will be more
probative than prejudicial.  Montgomery, 810 S.W.2d at 376.  The trial court=s
decision will not be disturbed on appeal unless it falls outside the zone of
reasonable disagreement.  Jones,
944 S.W.2d at 651.

We must first
determine if the photograph is probative of some relevant fact.  Reese v. State, 33 S.W.3d 238, 241
(Tex.Crim.App. 2000).  In general,
evidence that has a bearing on the defendant=s
personal responsibility and moral guilt is admissible during the punishment
phase.  Stavinoha v. State, 808
S.W.2d 76, 79 (Tex.Crim.App. 1991).

Here, the essence
of the challenge is that because the photographs were taken years before
Appellant was known to be a gang member and years before the instant crime they
are not relevant.  Though after the
admission of the photographs, we note that Appellant testified that he joined
the gang in 1993.  They were relevant.








Once a defendant
objects to photographic evidence on the basis of Rule 403, Texas Rules of
Evidence, the trial court must weigh its probative value against its potential
for unfair prejudice.  Jones v. State,
982 S.W.2d 386, 394 (Tex.Crim.App. 1998). 
An appellate court reviewing the trial court=s
decision may reverse it only for an abuse of discretion, i.e., only when the
trial court=s
decision was outside the zone of reasonable disagreement.  Id. at 394.  An abuse of discretion occurs when the
probative value of the photograph is small and its inflammatory potential
great.  Id.








Texas courts have
recognized that the First Amendment does not bar admission of a defendant=s gang membership at the punishment
phase of trial.  See Anderson v. State,
901 S.W.2d 946, 953 (Tex.Crim.App. 1995). 
A defendant=s
affiliation with a gang may be relevant and admissible at the punishment stage
of a trial for its bearing on the character of the accused.  See id. at 950; Beasley v.
State, 902 S.W.2d 452, 456 (Tex.Crim.App. 1995).  The evidence must show the purpose of the
gang to which defendant belongs so that the fact finder can conclude whether
membership in this gang is a positive or negative character trait of the
defendant.  See Anderson, 901
S.W.2d at 950.  In Beasley, the
Court of Criminal Appeals held that it is not necessary to link the accused to
the bad acts or misconduct generally engaged in by gang members, so long as the
fact finder is (1) provided with evidence of the defendant=s gang membership, (2) provided with
evidence of character and reputation of the gang, (3) not required to determine
if the defendant committed the bad acts or misconduct, and (4) only asked to
consider reputation or character of the accused.  See Beasley, 902 S.W.2d at 457.  The evidence in the record here shows
that:  (1) Appellant was a member of a
gang; (2) the gang was involved in criminal activities; (3) the jury was not
required to determine if Appellant committed the bad acts or misconduct of the
gang; and (4) the jury was only asked to consider the reputation or character
of the accused.  The trial court did not
abuse its discretion in admitting the photographs.  We overrule Issue Four, and affirm the
judgment of the trial court.

 

 

 

 

June
30, 2003

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

 

(Do Not Publish)