COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS






BRIAN WEESE,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 

No. 08-01-00507-CR



Appeal from the

 

243rd Judicial District Court

of El Paso County, Texas 


(TC# 20010D01124)






M E M O R A N D U M O P I N I O N


 Appellant appeals his conviction for manslaughter. Appellant was indicted for
manslaughter and aggravated assault arising out of a car accident. The jury only convicted
Appellant of manslaughter. The trial court sentenced him to sixteen (16) years' confinement
in the Texas Department of Criminal Justice. We affirm the judgment of the trial court.




FACTUAL SUMMARY


 On December 23, 2000, Eduardo Castanon was watching television at his girlfriend's
house located at the intersection of Altura and Kentucky in El Paso, Texas. Castanon got up
to change the channel and heard a car on Savannah accelerating through the turn and saw a
green car go by on Kentucky very fast as if it were racing. Castanon thought to himself that
the car was not going to stop for the stop sign at Richmond and Kentucky and next heard an
impact and screeching tires. The day was overcast with no rain and clear visibility. He then
went to the accident scene since he was trained in CPR and emergency aid and saw the green
car on the south side of the Richmond intersection and another vehicle that was beige or an
older gold on the southeast corner of the intersection. The green car had damage to the front
and the brown vehicle to the driver's side. A male and a female were standing at the green
vehicle seemingly in shock, so he headed toward the other vehicle where there was a female
in the passenger side and a male in the driver's seat. The female seemed to be in shock, and
the male kept saying something about his mother and seemed to be pinned in. Castanon tried
to calm him down and helped him get loose and laid him on the grass. He saw people
standing over looking at something and walked over to see an elderly woman lying in the
grass. She had no pulse, was not breathing, had a cut on her head, and a broken leg. Next,
the firemen arrived. 

 The passengers of the 1994 brown Buick Skyhawk were Miguel and Rosalia Mercado
and Miguel's mother, Dolores. Miguel believed that his mother was sitting in the back on
the passenger side and that she was not wearing her seatbelt. The trio had returned from
shopping downtown, and Miguel was taking his mother on Scenic Drive so that she could
see the El Paso scenery. They had already been up to the scenic outlook when they were
returning to their house on Dyer Street driving toward Alabama. When their car approached
the intersection of Richmond and Kentucky, Miguel turned to the left and saw something
green or blue. He tried to turn to the right side, but did not remember the events which
followed and woke up later from a coma. Rosalia remembered hearing an explosion through
her husband's side of the car and characterized the following events as being in a washer or
blender and ending up against something, possibly a curb. 

 Armando Rojas was one of many El Paso police officers who responded to the scene
of the accident at Richmond and Kentucky. When he arrived at the scene, he noticed that the
cars were badly damaged and that EMS and firefighters were already at the scene. He
assisted with CPR for the older woman ("the decedent") lying in the grass. The accident area
was roped off and back-up was called. Officer Ruben Cisneros arrived at the scene as the
accident reconstructionist. Cisneros believed that the green car a 1994 Subaru Legacy was
traveling south on Kentucky approaching the stop sign at the northwest corner of the
intersection. The 1985 gold Buick Skyhawk was traveling east on Richmond approaching
the intersection with no stop sign. The Subaru failed to yield the right of way at the stop sign
and collided with the left side of the Buick. Then, the Buick spun counterclockwise moving
southeasterly with the Subaru moving in the same direction in a clockwise motion. Cisneros
believed that the decedent was ejected from the Buick and swatted with the Subaru's left
quarter panel and propelled over to the grassy area at the southwest corner due to a dent in
the Subaru's left back panel. Green paint abrasions were found on the decedent's body. 

 Cisneros testified that Appellant told him at the scene that he had failed to stop at the
stop sign and mentioned nothing about the car's brakes. Appellant also stated that the car
had no pre-existing damage and that he was trying to make a right turn. The officer testified
that the stop sign was unobstructed. The officer next used the AIMS system to measure the
scene and used the measurements downloaded onto a computer to generate a scaled-down
version of the scene. Cisneros's calculations led him to believe that the collision occurred
at a 88 degree angle and that Appellant's car was going 35 mph and the decedent's 23 mph. 
The speed limits on both roads were 30 mph. Further, he found no pre-impact skids. 
Appellant's passenger told police that Appellant had been pumping the brakes prior to the
accident, but Cisneros testified that ABS brakes made a pulsating action when working. 
Even though, Cisneros found a bottle of wine in Appellant's car that was opened and mostly
empty, he determined that Appellant had not been drinking. Three or four days after the
accident, Appellant's dad called to mention problems with the brakes. 

 The defense had Curtis Flynn testify in rebuttal to Cisneros's reconstruction of the
accident. Flynn, a private accident reconstructionist formerly employed by the police
department, disagreed with Cisneros's point of impact and believed that impact was actually
slightly behind the center mass of the car and not impacting into the left front fender and
front tire area. Further, Flynn found that since the Buick's tire was bent over and crushed
and unable to rotate that it made the skidding on the road. He also believed that both cars
spun in a counterclockwise motion as opposed to opposite directions and that the Buick made
a 360 degree rotation so that the decedent was thrown out the back window to her resting
place and that she was not hit by the Subaru. Next, he testified that the gouge mark was
caused by the bent tire and not the undercarriage of the Buick. Last, Flynn calculated the
speed of the cars as 31 mph for the Subaru and 18 mph for the Buick. 

 After the call from Appellant's father, the police department had its lead mechanic
Gustavo Armas inspect the Subaru's brakes. Armas inspected the brakes of Appellant's car
and found the brake pads a little worn but still in working condition. The car had a four-wheel disc system, and the rotors were shiny meaning the brakes were working. The brake
fluid was a little low, but the brake pedal felt okay. Flynn also testified in rebuttal to Armas's
testimony about the condition of the brakes. The defense took issue with a statement in
Armas's report that the brake pedal went all the way to the floor. Flynn testified that if the
brake pedal went all the way to the floor that there was a problem. Armas explained that his
statement meant he was checking the brake pedal to see if it was working and that had it been
failing then it would have depressed all the way to the floor. However, he found the pedal
was fine. Appellant's mother testified that the car that Appellant was driving was hers and
that two weeks prior to the accident she had experienced brake problems on Transmountain
road although the brake indicator light did not come on. Appellant had not driven the car
during that two weeks, and she did not tell her son about the brake problems. Appellant's
mother also testified that the dent to the left back panel of the car was pre-existing due to an
accident where a friend had backed into her a month after she got the car. 

 Last, Dr. Stern, El Paso County's chief medical examiner testified regarding the cause
of the decedent's death. Stern believed that the decedent's death was caused by the car
accident due to multiple blunt force injuries. 

CHARGE ON LESSER-INCLUDED OFFENSE


 In his sole point of error on appeal, Appellant argued that the trial court erred by
refusing his request for a charge on the lesser-included offense of criminally negligent
homicide. Appellant contended that the evidence showed that he acted only with criminal
negligence since (1) he had not been drinking at the time of the accident; (2) the brakes on
the car he was driving may have failed; (3) conflicting evidence was offered regarding the
point of impact, the travel path of the vehicles post-collision, the impact speed of the
vehicles, and the condition of the brakes; (4) the brake pads were in need of service; and (5)
he was not aware of the brake problems before the collision.

Jury Charge & Objections

 The jury instructions charged the jury on (1) manslaughter and (2) aggravated assault. 
Appellant objected to the charge and requested the lesser-included charge of criminally
negligent homicide. The trial court denied the Appellant's request for the lesser-included
charge. 

Applicable Law

 To determine whether Appellant was entitled to a charge on the lesser-included
offense, we apply a traditional two-prong test. See Bignall v. State, 887 S.W.2d 21, 23 (Tex.
Crim. App. 1994); Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex. Crim. App.), cert.
denied, 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993); Royster v. State, 622 S.W.2d
442, 446 (Tex. Crim. App. 1981); Bartholomew v. State, 882 S.W.2d 53, 54-55 (Tex. App.--Houston [14th Dist.] 1994, pet. ref'd); Ramirez v. State, 976 S.W.2d 219, 226-27 (Tex.
App.--El Paso 1998, pet. ref'd). First, the lesser included offense must be included within
the proof necessary to establish the offense charged. Bignall, 887 S.W.2d at 23; Ramirez,
976 S.W.2d at 227. Second, some evidence must exist in the record that would permit a jury
rationally to find that if the defendant is guilty, he is guilty only of the lesser offense. 
Ramirez, 976 S.W.2d at 227. The credibility of the evidence and whether it conflicts with
other evidence or is controverted may not be considered in making the determination of
whether the lesser-included offense should be given. See Gadsden v. State, 915 S.W.2d 620,
622 (Tex. App.--El Paso 1996, no pet.); Barrera v. State, 914 S.W.2d 211, 212 (Tex. App.--El Paso 1996, pet. ref'd). Regardless of its strength or weakness, if any evidence raises the
issue that the defendant was guilty only of the lesser offense, then the charge must be given. 
Saunders v. State, 840 S.W.2d 390, 391 (Tex. Crim. App. 1992). An accused is guilty only
of a lesser-included offense if there is evidence that affirmatively rebuts or negates an
element of the greater offense, or if the evidence is subject to different interpretations, one
of which rebuts or negates the crucial element. See Ramirez, 976 S.W.2d at 227. It is not
enough that the jury may disbelieve crucial evidence pertaining to the greater offense. See
Skinner v. State, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997), cert. denied, 523 U.S. 1079,
118 S.Ct. 1526, 140 L.Ed.2d 677 (1998). There must be some evidence directly germane to
the lesser-included offense for the jury to consider before an instruction on the
lesser-included offense is warranted. See Ramirez, 976 S.W.2d at 227. 

Criminally Negligent Homicide

 Criminally negligent homicide is a lesser included offense of manslaughter. Aliff v.
State, 627 S.W.2d 166, 171 (Tex. Crim. App. 1982); Stadt v. State, 120 S.W.3d 428, 438
(Tex. App.--Houston [14th Dist.] 2003, pet. granted). Thus, we must determine whether
there is evidence in the record from which a jury could rationally acquit Appellant of the
greater offense while convicting him of the lesser offense. Manslaughter involves recklessly
causing the death of another. Tex. Pen. Code Ann. § 19.04(a) (Vernon 2003). Criminally
negligent homicide involves causing the death of another by criminal negligence. Tex. Pen.
Code Ann. 19.05(a) (Vernon 2003). Criminal negligence requires a lesser culpable mental
state than recklessness. Tex. Pen. Code Ann. § 6.03(c), (d) (Vernon 2003); see Conroy v.
State, 843 S.W.2d 67, 71 (Tex. App.-- Houston [1st Dist.] 1992, pet. ref'd). Criminal
negligence involves inattentive risk creation; the actor ought to be aware of the risk
surrounding his conduct or the results thereof. Lugo v. State, 667 S.W.2d 144, 147-48 (Tex.
Crim. App. 1984); Lewis v. State, 529 S.W.2d 550, 553 (Tex. Crim. App. 1975); Todd v.
State, 911 S.W.2d 807, 814 (Tex. App.--El Paso 1995, no pet.). Reckless conduct involves
conscious risk creation; that is, the actor is aware of the risk surrounding his conduct or the
results thereof, but consciously disregards that risk. Todd, 911 S.W.2d at 814-15. At the
heart of reckless conduct is conscious disregard of the risk created by the actor's conduct;
the key to criminal negligence is found in the failure of the actor to perceive the risk. Id. at
815. Before a charge on criminally negligent homicide is required, the record must contain
evidence showing an unawareness of the risk. Mendieta v. State, 706 S.W.2d 651, 653 (Tex.
Crim. App. 1986); Ybarra v. State, 890 S.W.2d 98, 111 (Tex. App.--San Antonio 1994, pet.
ref'd). 

 In Mendieta, 706 S.W.2d at 652, Mendieta testified that he intended to keep the
deceased away from him by swinging a knife in front of him. There was no evidence that
Mendieta was unaware of the risk his conduct created. Id. at 653. Thus, the court found that
he was aware of the risk he created with his conduct and was not warranted an instruction
on criminally negligent homicide.

 In Ybarra, 890 S.W.2d at 111, Appellant testified that he did not intend to kill the
deceased and shot to scare the deceased but that he knew that it was dangerous to have a gun
and dangerous to shoot at someone; that he had purchased the handgun and bullets; that he
had test-fired the weapon; that he knew on the occasion in question that he was shooting the
loaded gun in the direction of the deceased; and that when you point a gun at somebody's
head and squeeze the trigger, it is likely to kill the individual. Thus, the court found that 
Appellant was aware of the risk his conduct created and was not erroneously denied a charge
on criminally negligent homicide. Id. 

 In Lafleur v. State, 84 S.W.3d 309, 310 (Tex. App.--Beaumont 2002), rev'd on other
grounds, 106 S.W.3d 91 (Tex. Crim. App. 2003). Lafleur was involved in a confrontation
with another man when he fired the fatal shot which struck the man in the head. Lafleur's
defense was based on self defense, and he testified that the man had threatened to stab him
and had a knife in his hand and that he feared for his life. Id. at 310. The court found that
while Lafleur's testimony raised the issue of self defense that it did not raise the issue of
criminal negligence. Id. at 311. Lafleur admitted that he fired the gun consciously while
standing one or two feet of the man and did not claim to be unaware of the risk that the man
might be killed or wounded. Id. 

 Here, Appellant admitted in his statement that he slowed down because he knew the
stop sign was at the intersection. Further, at the scene he admitted that he ran through the
stop sign and did not mention anything about the car's brakes. However, the evidence
showed that several days after the accident that Appellant's father called the police station
and mentioned that the car's brakes might have failed. At trial, the defense called
Appellant's mother to the stand who testified that two weeks before the wreck she had
experienced brake problems while driving the car on Transmountain and that she did not tell
Appellant about those problems before he drove her car the day of the accident. However,
if the jury believed the testimony of Appellant's mother and that the brakes failed on the day
in question, then Appellant should have been acquitted of manslaughter and was not
warranted an instruction on criminally negligent homicide since Appellant's conduct did not
involve inattentive risk creation since he should not have been aware of the risk surrounding
his conduct or the results of that conduct. Thus, there is no evidence that would permit a jury
to rationally find that if Appellant was guilty, he was guilty only of criminally negligent
homicide. Rousseau, 855 S.W.2d at 672; Gasden, 915 S.W.2d at 622-23. Accordingly, we
hold that the trial court did not err in denying Appellant's request for a charge on the lesser-included offense of criminally negligent homicide, and Appellant's sole point of error on
appeal is overruled.

 Having overruled Appellant's sole point of error, we affirm the judgment of the trial
court.

July 23, 2004


 RICHARD BARAJAS, Chief Justice


Before Panel No. 3

Barajas, C.J., Larsen, and Chew, JJ.


(Do Not Publish)